MDR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Montavis D. Middleton, | No. CV 20-00130-TUC-DCB |
| Plaintiff, | |
| v. | **ORDER** |
| Barbara Von Blanckensee, et al., | |
| Defendants. | |

On March 20, 2020, Plaintiff Montavis D. Middleton, who is confined in the United States Penitentiary-Tucson (USP-Tucson) in Tucson, Arizona, filed a pro se civil rights Complaint (Doc. 1) pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In an April 3, 2020 Order, the Court gave Plaintiff thirty days to either pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis.

On April 27, 2020, Plaintiff filed an Application to Proceed In Forma Pauperis (Doc. 4). The Court will grant the Application to Proceed, order Defendant Von Blanckensee to answer the retaliation claim in Count Two of the Complaint, and dismiss the remaining claims and Defendants without prejudice.

**I.  Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $6.18. The remainder of

TERMPSREF

1  the fee will be collected monthly in payments of 20% of the previous month's income
2  credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.
3  28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate
4  government agency to collect and forward the fees according to the statutory formula.

5  **II.     Statutory Screening of Prisoner Complaints**

6        The Court is required to screen complaints brought by prisoners seeking relief
7  against a governmental entity or an officer or an employee of a governmental entity.  28
8  U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff
9  has raised claims that are legally frivolous or malicious, that fail to state a claim upon which
10 relief may be granted, or that seek monetary relief from a defendant who is immune from
11 such relief.  28 U.S.C. § 1915A(b)(1)–(2).

12       A pleading must contain a "short and plain statement of the claim *showing* that the
13 pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does
14 not demand detailed factual allegations, "it demands more than an unadorned, the-
15 defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
16 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere
17 conclusory statements, do not suffice." *Id.*

18       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
19 claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,
20 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
21 that allows the court to draw the reasonable inference that the defendant is liable for the
22 misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for
23 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
24 experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual
25 allegations may be consistent with a constitutional claim, a court must assess whether there
26 are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

27       But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
28 must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342

TERMPSREF

(9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III. Complaint

In his three-count Complaint, Plaintiff sues the United States, the Bureau of Prisons (BOP), BOP Regional Director Gene Beasley, Complex Warden Barbara Von Blanckensee, Associate Warden Herbert Koger, Captain Daren McWhorter, Special Investigative Services (SIS) Lieutenant A. Gallion, and Special Housing Unit (SHU) Lieutenant Jeremy Ulrich. In his Request for Relief, Plaintiff seeks monetary damages, injunctive relief, and his costs and fees.

In **Count One**, Plaintiff alleges his First Amendment right to the freedom of association is being violated. Plaintiff claims Defendant Gallion "falsely accused" him of conspiring with his sister, during a visit, to introduce drugs into the penitentiary. Plaintiff contends Defendant Gallion submitted a recommendation to Defendants McWhorter, Koger, and Von Blanckensee, which was "supported by the false drug introduction accusations," to indefinitely suspend Plaintiff's visitation and telephone privileges with his sister. Plaintiff asserts that over his objections, Defendants McWhorter and Koger supported Defendant Gallion's recommendation and Defendant Von Blanckensee ultimately suspended Plaintiff's visitation and telephone privileges with his sister. Plaintiff also claims Defendant Gallion, who monitors incoming and outgoing correspondence, began delaying, by six to seven weeks, Plaintiff's incoming and outgoing correspondence with his sister and all others. Plaintiff asserts administrative appeals to Defendant BOP "to reverse these activities did not result in its cessation." Plaintiff contends he has lost access to his sibling and has suffered from anxiety, depression, and suicidal thoughts and feelings.

In **Count Two**, Plaintiff alleges he has been subjected to a violation of his Eighth Amendment rights and to retaliation. Plaintiff claims that after Defendant Gallion's allegations that Plaintiff conspired with his sister to introduce drugs into the penitentiary, Plaintiff was confined in the SHU, where the "conditions were abysmal." Specifically,

Plaintiff asserts that for nearly a year, he was denied clean clothing and linens, sanitation supplies to clean his cell, and access to a television, radio, magazines, books, and educational programs. He also contends that the portions of food in the SHU were "so minimal" that he lost at least ten percent of his body weight and that the officers verbally harassed inmates with constant profanity and insults.

Plaintiff claims he and other SHU inmates complained about the conditions to Defendants Von Blanckensee, Koger, McWhorter, Gallion, Ulrich, and Beasley. Plaintiff contends these Defendants were personally aware of the conditions from Plaintiff's complaints and from a "multitude of lawsuits" by current and former USP-Tucson inmates and the estates of deceased inmates, but none of these Defendants took corrective action. Plaintiff asserts that instead of taking corrective action, Defendant Von Blanckensee retaliated by removing coffee, food, and hygiene items from the SHU commissary, which prevented Plaintiff from purchasing soap, a toothbrush, or deodorant. Plaintiff contends that he has lost weight, is constantly hungry, and has a skin irritation or rash, constant body odor, tooth decay, anxiety, depression, irritability, and suicidal ideation as a result of the conduct described in Count Two.

In **Count Three**, Plaintiff alleges he was subjected to retaliation in violation of his First and Eighth Amendment rights, the Federal Tort Claims Act (FTCA), and "state law claims of negligence and intentional infliction of emotional distress." He contends the allegations in Counts One and Two "involved" Defendants United States and BOP because the Defendants discussed in Counts One and Two are employees of Defendants BOP and United States. Plaintiff alleges the actions of the Defendants named in Counts One and Two "explicitly violated numerous BOP program statements, regulations and the standard of care generally mandated by 18 U.S.C. 4042 et seq." Plaintiff claims he is seeking damages from Defendant United States and injunctive relief from Defendant BOP.

**IV.   Discussion of Complaint**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey*

*v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

To state a valid claim under *Bivens*, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### A.     Count One

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

A prison can "adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1048-49 (9th Cir. 2002) (jail personnel may regulate speech if a restriction is reasonably related to legitimate penological interests and an inmate is not deprived of alternative means of expression). "Drug smuggling and drug use in prison are intractable problems" and deterring the use of drugs in prison is a legitimate goal. *Overton*, 539 U.S. at 134.

Plaintiff does not allege that suspending visitation and telephone privileges and delaying the processing of his mail are not reasonably related to legitimate penological interests. *See id.* (upholding two-year loss of visitation for inmates with substance-abuse violations, noting that "[w]ithdrawing visitation privileges is a proper and even necessary

1   management technique to induce compliance with the rules of inmate behavior, especially
2   for high-security prisoners who have few other privileges to lose"); *O'Keefe v. Van*
3   *Boening*, 82 F.3d 322, 326. (9th Cir. 1996) ("prevention of criminal activity and the
4   maintenance of prison security are legitimate penological interests which justify the
5   regulation of both incoming and outgoing prisoner mail"); *Valdez*, 302 F.3d at 1049
6   (telephone restriction rationally related to legitimate governmental interest).  Thus, the
7   Court will dismiss without prejudice Count One.[1]

### B.   Count Two - Conditions of Confinement

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a

---

[1] Moreover, to the extent Plaintiff is alleging his visitation and telephone privileges were suspended and his mail is being delayed because Defendant Gallion "falsely accused" him of conspiring to introduce drugs into the penitentiary, he has also failed to state a claim. An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim).

A prisoner has "the right not to be deprived of a protected liberty interest without due process of law." *Freeman*, 808 F.2d at 951.  Assuming without deciding that Plaintiff was entitled to due process before his privileges were suspended and his mail was delayed, Plaintiff does not allege he was denied the procedural due process safeguards required by *Wolff v. McDonnell*, 418 U.S. 539, 565-66 (1974): (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so.

substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

As to his allegations regarding his conditions of confinement, Plaintiff has only made vague and conclusory allegations regarding a group of Defendants.  Plaintiff does not identify what he told each Defendant when he complained about the conditions of his confinement, what he requested each Defendant do, what response each Defendant provided, and how that response rose to the level of deliberate indifference.  Absent more specific allegations, Plaintiff has failed to state a claim regarding his conditions of confinement, and the Court will dismiss this portion of Count Two.[2]

### C.   Count Two - Retaliation

#### 1.   Claim for Damages

In *Bivens*, the Supreme Court recognized an implied cause of action for damages for persons injured by federal officers who violated the Fourth Amendment prohibition against unreasonable searches and seizures.  *See Bivens*, 403 U.S. at 396-97.  In *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843 (2017), the Supreme Court cautioned that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and set forth a two-part test to determine whether a *Bivens* claim may proceed.  137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).  A court first must consider whether the claim at issue extends *Bivens* in a new context from previously established *Bivens* cases, and, if so, a court must then apply a "special factors analysis" to determine whether there are "special factors counselling hesitation" in expanding *Bivens*.  *Id.* at 1857, 1859-60.

. . . .

. . . .

---

[2] Moreover, "'[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'"  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979))).  Additionally, Plaintiff has no constitutional right to education programs or various forms of entertainment.  *See James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992) ("[A] prisoner who is denied a pack of playing cards or a television set has not set out a deprivation of constitutional dimensions under the eighth amendment."); *Hoptowit v. Ray*, 682 F.2d 1237, 1254 (9th Cir. 1982) ("Idleness and lack of programs are not Eighth Amendment violations.").

### a. Plaintiff's First Amendment Retaliation Claim Would Extend *Bivens* in a New Context

It is immaterial whether this Court, the Ninth Circuit Court of Appeals, or other district and appellate courts have recognized a *Bivens* claim based on the First Amendment; the Supreme Court has clearly stated that "[t]he proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases *decided by this Court*, then the context is new." *Id*. at 1859 (emphasis added).

The Supreme Court explained that

> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860. This list is not exhaustive, and the "new-context inquiry is easily satisfied." *Id*. at 1865.

After *Bivens*, the Supreme Court has only recognized a *Bivens* damages remedy under the Fifth Amendment Due Process Clause by an administrative assistant who claimed a Congressman had discriminated against her because of her sex, *Davis v. Passman*, 442 U.S. 228 (1979), and under the Eighth Amendment prohibition against cruel and unusual punishment by a prisoner who claimed federal prison officials had failed to treat his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

Although the Supreme Court has *assumed* for analytical purposes that a *Bivens* cause of action exists under the First Amendment,[3] it has never specifically *concluded* that

---

[3] *See Wood v. Moss*, 572 U.S. 744, 757 (2014) ("[W]e have several times assumed

such as cause of action exists. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to authorize "a new nonstatutory remedy for federal employees whose First Amendment rights are violated by their superiors"); *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) ("The Supreme Court has never implied a *Bivens* action under any clause of the First Amendment."). Thus, Plaintiff's First Amendment retaliation claim arises in a new context because it is substantially and meaningfully different from the three types of cases in which the Supreme Court has recognized a *Bivens* remedy.

### b. The Court Declines to Find an Implied Cause of Action Under *Bivens* For Plaintiff's First Amendment Retaliation Claim

If the claim at issue extends *Bivens* in a new context, a court must analyze whether there are "special factors counselling hesitation" in expanding *Bivens*. *Ziglar*, 135 S. Ct. at 1857. When performing the special-factors analysis, courts must consider "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* (quoting *Bush*, 462 U.S. at 380). "The answer most often will be Congress. When an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'" *Id*. (quoting *Bush*, 462 U.S. at 380).

In conducting the special factors inquiry, the court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.*

> [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system of enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

---

without deciding that *Bivens* extends to First Amendment claims. We do so again in this case.") (citation omitted).

*Id.* at 1858. This requires courts to assess the impact on governmental operations systemwide, including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.*

"Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." *Buenrostro v. Fajardo*, 2017 WL 6033469, at *3 (E.D. Cal. 2017). Congress passed the Prison Litigation Reform Act ("PLRA"), which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation." *Rager v. Augustine*, 2017 WL 6627416, at *18 (N.D. Fla. 2017), *report and recommendation adopted*, 2017 WL 6627784 (N.D. Fla. 2017). Indeed, the Supreme Court noted:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citation omitted). "Further evidence that Congress does not want a damages remedy for First Amendment retaliation or access-to-the-courts claims filed by prisoners is the provision in [42 U.S.C.] § 1997e which limits a prisoner's recovery for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *Rager*, 2017 WL 6627416, at *19.

Additionally, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 135 S. Ct. at 1858. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863. Plaintiff has alternative remedies available to him because, at a minimum, the Bureau of Prisons has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her

own confinement." 28 C.F.R. § 542.10(a). *See Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding the plaintiff had alternative means of relief under 28 U.S.C. §§ 541.7 and 542.10(a)); *Buenrostro*, 2017 WL 6033469, at *3 (where inmate alleged violations of his Fifth Amendment due process rights and retaliation in violation of the First Amendment, "[i]t [wa]s clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *see also Ziglar*, 137 S. Ct. at 1865 ("And there might have been alternative remedies available here, for example, a writ of habeas corpus, an injunction requiring the warden to bring his prison into compliance with the regulations discussed above; or some other form of equitable relief."); *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) ("A *Bivens* action is not necessary in suits, such as this one, which seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims.").

Based on special factors that counsel hesitation and the existence of alternative remedies, the Court declines to find an implied *Bivens* cause of action here. Thus, the Court will dismiss Plaintiff's claim for damages for the alleged retaliation in violation of the First Amendment.

### 2.     Injunctive Relief

"Section 1331[, 28 U.S.C.,] provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law. No more specific statutory basis is required." *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, although Plaintiff cannot seek monetary damages pursuant to *Bivens* for his First Amendment retaliation claim, he may still seek declaratory or injunctive relief pursuant to 28 U.S.C. § 1331, assuming he has stated a claim.

Liberally construed, Plaintiff has stated a First Amendment retaliation claim against Defendant Von Blanckensee based on her removing coffee, food, and hygiene items from

the SHU commissary in retaliation Plaintiff's complaints about his conditions of confinement. Thus, the Court will require Defendant Von Blanckensee to answer the retaliation claim in Count Two.

### D. Count Three

#### 1. Defendant BOP

A remedy does not exist under *Bivens* against Defendant BOP because a *Bivens* action is only available against federal *officers*, not agencies of the federal government. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994). In addition, the United States is the only proper defendant in an action brought pursuant to the FTCA. 28 U.S.C. §§ 1346(b), 2679(a) and (b); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984). "Individual agencies of the United States may not be sued." *Allen*, 749 F.2d at 1388. Finally, to the extent Plaintiff alleges the actions of the Defendants "explicitly violated numerous BOP program statements, regulations and the standard of care generally mandated by 18 U.S.C. 4042 et seq," his allegations are completely vague and conclusory; Plaintiff does not identify which BOP Program Statements and regulations were violated and how. Thus, the Court will dismiss without prejudice Defendant BOP.[4]

. . . .

. . . .

---

[4] Plaintiff appears to be trying to proceed under the Administrative Procedures Act (APA), which provides a cause of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. However, the APA "withdraws that cause of action to the extent that the relevant statute 'preclude[s] judicial review' or the 'agency action is committed to agency discretion by law.'" *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) (quoting 5 U.S.C. § 701(a)).

"Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions." *Id.* (citing 18 U.S.C. § 4042(a)(1)). "[T]he BOP implements Program Statements and other policies, such as Institutional Supplements, to manage the prison system." *Sebolt v. LaRiva*, 2017 WL 2271441, at *6 (S.D. Ind. 2017). A Program Statement is an "internal agency guideline," rather than "'published regulations subject to the rigors of the Administrative Procedure Act,'" and is "akin to an 'interpretive rule.'" *Reno v. Koray*, 515 U.S. 50, 61 (1995) (alteration omitted). Program Statements can be altered at will, *Reeb*, 636 F.3d at 1227, and "do not create entitlements enforceable under the APA." *Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011). *Solan v. Zickefoose*, 530 Fed. App'x 109, 111-12 (3d Cir. 2013).

### 2. Defendant United States

Under the Federal Tort Claims Act, Congress authorized suits against the United States for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable." 28 U.S.C. § 1346(b). However, under the statutory procedure set forth in 28 U.S.C. § 2675(a), a "tort claimant may not commence proceedings in court against the United States without first filing h[is] claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992).

The Ninth Circuit Court of Appeals has "repeatedly held that this 'claim requirement of section 2675 is jurisdictional in nature and may not be waived.'" *Id.* (quoting *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985)). Plaintiff does not allege he presented a claim to the appropriate federal agency prior to commencement of this action and either received a denial of the claim or waited for six months to elapse without a final disposition being made, as required by 28 U.S.C. § 2675(a).[5] Accordingly, the Court will dismiss without prejudice Plaintiff's claim against Defendant United States for lack of subject matter jurisdiction.

. . . .

. . . .

. . . .

---

[5] In discussing his exhaustion of his administrative remedies as to Count Three, Plaintiff states that he did not "submit or appeal a request for administrative relief at any level" because he "received threats from BOP staff following submission of administrative remedy and SF-95 form." Standard Form 95 (SF-95) allows a complainant to file an administrative "Claim for Damage, Injury, or Death" under the FTCA, but Plaintiff does not provide a copy of the SF-95, indicate that he submitted it to the Bureau of Prisons, and, even if he did submit it to the Bureau of Prisons, indicate when he submitted it and whether he received a denial or waited six months after submitting it without a final disposition before filing his lawsuit.

## V. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 4) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $6.18.

TERMPSREF

(3) Count One, the conditions of confinement claim in Count Two, the claim for damages for retaliation in Count Two, and Count Three are **dismissed** without prejudice.

(4) Defendants Koger, McWhorter, Gallion, Ulrich, Beasley, Bureau of Prisons, and United States are **dismissed** without prejudice.

(5) Defendant Von Blanckensee must answer the retaliation claim in Count Two.

(6) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and summons forms for Defendant Von Blanckensee.

(7) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not complete service of the Summons and Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10) The United States Marshal must, for Defendant Von Blanckensee, personally serve a copy of the Summons, Complaint, and this Order at Government expense, pursuant to Rule 4(e)(2) and (i)(3) of the Federal Rules of Civil Procedure.

(11) Upon receipt of the service packet, the Clerk of Court must send by certified mail a copy of the Summons for Defendant Von Blanckensee, the Complaint, and this Order to (1) the civil process clerk at the office of the United States Attorney for the District of Arizona and (2) the Attorney General of the United States, pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure.

. . . .

. . . .

. . . .

. . . .

(12) Defendant Von Blanckensee must answer the relevant portion of Count Two of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

Dated this 7th day of May, 2020.

_____
Honorable David C. Bury
United States District Judge